UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APP INVESTMENT OPPORTUNITY LLC,<br><br>                        Plaintiff,<br><br>   -against-<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>                        Defendant. | Case No. 1:15-cv-06666-AT |

**STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1 IN SUPPORT OF PLAINTIFF APP INVESTMENT OPPORTUNITY LLC'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1 and in support of its Motion for Summary Judgment, APP Investment Opportunity LLC ("**Plaintiff**") submits this statement of material facts as to which there is no genuine issue to be tried.[1]

1. In 1995, APP International Finance Company B.V. ("**APP Finance**") issued, and each of Asia Pulp & Paper Company Ltd. ("**APP**") and P.T. Lontar Papyrus Pulp & Paper Industry ("**Lontar**," and together with APP Finance and APP, the "**Judgment Debtors**") guaranteed, 11 3/4% guaranteed secured Notes due 2005 (the "**Notes**"). The Notes were issued pursuant to an Indenture (the **"Indenture"**), dated September 18, 1995, among APP Finance as issuer, APP and Lontar as guarantors, and BankAmerica National Trust Company as trustee ("**BankAmerica**"). A copy of the Indenture is attached as Exhibit A to the Declaration of Dennis H. Hranitzky, dated December 23, 2015 ("**Hranitzky Decl.**").

---

[1] Counsel for Defendant/Trustee U.S. Bank National Association ("**Defendant/Trustee**") has advised that, without taking a position as to their materiality, Defendant/Trustee does not dispute any of the facts set forth in this 56.1 Statement.

1

2. Defendant/Trustee U.S. Bank National Association ("**Defendant/Trustee**") is the successor indenture trustee to BankAmerica. Amended Complaint in U.S. Bank action, attached as Exhibit B to the Hranitzky Decl., ¶ 3.

3. Plaintiff is the beneficial holder of $18,443,000 in principal amount of Notes. Declaration of Xiao Song, dated December 23, 2015 ("**Song Decl.**") ¶ 5.

4. Section 4.7 of the Indenture—titled "Right of Noteholders to Receive Principal and Interest"— states in relevant part: "Notwithstanding any other provision in this Indenture, each Noteholder shall have the right to receive payment of the principal of and interest on its Note on the stated maturity or maturities expressed in such Note, and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Noteholder . . . ." Hranitzky Decl. Ex. A § 4.7.

5. Section 11.7 of the Indenture states: "If and to the extent that any provision of this Indenture limits, qualifies or conflicts with another provision included (or deemed to be included) in this Indenture by operation of Sections 310 to 317, inclusive, of the Trust Indenture Act of 1939 (an 'incorporated provision'), such incorporated provision shall control." Hranitzky Decl. Ex. A § 11.7.

6. Section 11.8 of the Indenture provides that the Indenture and Notes "shall be construed in accordance with and governed by the laws of the State of New York" and that "[e]ach of the Issuer and the Guarantors irrevocably and unconditionally submits to the non-exclusive jurisdiction of any New York State or United States Federal court sitting in New York City." Hranitzky Decl. Ex. A § 11.8.

7.  On or about April 2, 2001, APP Finance defaulted on the Notes by failing to make payment of interest then due to holders of the Notes ("Noteholders") pursuant to the Indenture. Hranitzky Decl. Ex. B, ¶ 4; Hranitzky Decl. Ex. A § 4.1.

8.  By letter dated November 1, 2001 to APP and Lontar, pursuant to Section 4.1 of the Indenture, Defendant/Trustee, acting at the direction of the requisite percentage of Noteholders, declared the principal amount of all of the Notes immediately due and payable. Hranitzky Decl. Ex. B ¶ 4.

9.  The Judgment Debtors have made no payments of principal or interest due to Plaintiff on the Notes since their default in April 2001.  Song Decl. ¶ 3.

10. In 2004, Defendant/Trustee filed an action in the Supreme Court for the State and County of New York, asserting claims for breach of contract based on the Judgment Debtors' payment default on the Notes.  Hranitzky Decl. Ex. B.

11.  On March 10, 2005, the Supreme Court entered Judgment (the "**2005 Judgment**") in favor of Defendant/Trustee for the benefit of holders of the Notes in the amount of $528,472,011 in principal amount and contractual interest due, plus statutory interest at the rate of 9% per year, which at the time of the Court's 2005 Judgment totaled an additional $7,557,874, for a total amount due of $536,029,885.  The 2005 Judgment is attached as Exhibit C to the Hranitzky Decl.

12.   On March 22, 2013, Defendant/Trustee gave notice to Noteholders that it had agreed with the Judgment Debtors to a standstill of all proceedings to enforce the 2005 Judgment.  In the notice, Defendant/Trustee informed Noteholders that unless otherwise instructed, it did not intend to take further action to enforce the 2005 Judgment.  Song Decl. ¶ 7. The 2013 Notice of Standstill is attached as Exhibit D to the Hranitzky Decl.

13. Defendant/Trustee assigned to Plaintiff Defendant/Trustee's right, title, and interest in the portion of the 2005 Judgment corresponding to Plaintiff's Notes as of March 30, 2015. As relevant to this dispute, Defendant/Trustee's assignment to Plaintiff included $18,443,000 in unpaid principal on the Notes, plus $11,262,411 in accrued contractual interest and $424,828 in statutory interest, for a total of $30,130,239. Song Decl. ¶ 6. A copy of the assignment documentation is attached as Exhibit E to the Hranitzky Decl.

14. The full amount owed to Plaintiffs under the 2005 Judgment remains unsatisfied and outstanding. Song Decl. ¶ 6.

15. On October 28, 2014, Lontar caused to be distributed to Noteholders an Exchange Offer Memorandum ("**EOM**"). A copy of the EOM is attached as Exhibit F to the Hranitzky Decl.

16. The EOM offered Noteholders the opportunity to exchange their Notes for new debt securities (the "**Exchange Offer**"). Under the terms of the Exchange Offer, Noteholders can tender their Notes in exchange for new Notes with the same aggregate face amount of principal, with the new Notes due 20 years from the effective date of the Exchange Offer. Hranitzky Decl. Ex. F, at 91, 100. Any Noteholder participating in the Exchange Offer would be:

> . . . deemed to have discharged, waived and released, to the fullest extent permitted by applicable law, any and all claims (including, without limitation, any existing, past or continuing defaults and their consequences in respect of such Existing Debt) whatsoever and howsoever arising, whether known or unknown, whether contingent or certain, and whether liquidated or unliquidated, which [they] have in respect of [their Notes] tendered in the Exchange Offer and Consent Solicitation against [the Judgment Debtors, their officers, directors, or affiliates].

Hranitzky Decl. Ex. F, at 34.

17. Under the terms of the Exchange Offer, to participate in the Exchange Offer, Noteholders also must consent to certain waivers and amendments to the Indenture (the "**Consent Solicitation**").  The Consent Solicitation contemplates amendments to Section 11.8 of the Indenture, titled "Governing Law; Consent to Jurisdiction; Waiver of Immunities."  The EOM explains that Section 11.8 would be amended as follows:

> This provision requires that (a) the Indenture (including the Guarantees) and the Notes shall be construed in accordance with and governed by the laws of the State of New York, and (b) each of the Issuer and the Guarantors irrevocably and unconditionally submits to the non-exclusive jurisdiction of any New York State or United States Federal Court sitting in New York City.  The proposed modifications are that that (sic) (a) the governing law be changed to the laws of England and Wales, [and] (b) each of the Issuer and the Guarantors irrevocably and unconditionally submits to the non-exclusive jurisdiction of the courts of England and Wales . . . .

Hranitzky Decl. Ex. F, at 118-19.

18. Under the terms of the Consent Solicitation, the proposed amendments are to be accepted or rejected as a single proposal.  Hranitzky Decl. Ex. F, at 109-10.

19. Plaintiff did not participate in the Exchange Offer or the Consent Solicitation. Song Decl. ¶ 11.

20. By participating in the Consent Solicitation, Noteholders would also be deemed to consent to deleting the following provisions from the Indenture:

- 3.13 ("Insurance"), which currently requires APP to cause Lontar and its subsidiaries to maintain insurance on certain Lontar collateral;

- 3.15 ("Taxes"), which currently requires Judgment Debtors and their subsidiaries to pay all taxes due;

5

- 3.16 ("Listing"), which currently requires Judgment Debtors to use their best efforts to maintain the listing of the Notes on the Luxembourg Stock Exchange;

- 3.18 ("Transactions with Affiliates"), which currently prohibits Judgment Debtors and their subsidiaries from entering into a transaction with an affiliate that would be less favorable than a comparable transaction with a non-affiliate;

- 3.19 ("Investments, Loans and Advances"), which currently prohibits Lontar from advancing to, loaning to, or investing in any person except in the ordinary course of business or in certain delineated instances;

- 3.20 ("Limitation on Incurrence of Debt"), which currently prohibits APP, Lontar, and Lontar's subsidiaries from incurring certain debts;

- 3.21 ("Limitation on Restricted Payments"), which currently prohibits Lontar and its subsidiaries from making certain payments;

- 3.22 ("Limitation on Restrictions on Distributions from Restricted Subsidiaries"), which currently prohibits APP and certain subsidiaries from restricting designated subsidiaries from making certain payments, loans, advances, or transfers;

- 3.23 ("Classification of Restricted and Unrestricted Subsidiaries"), which currently allows APP's Board of Directors to designate APP's subsidiaries as unrestricted if certain conditions are met;

- 3.25 ("Limitation on Sales of Non-Collateral Assets"), which currently prohibits APP and its subsidiaries from selling any capital stock or assets outside the ordinary course of business unless certain conditions are met;

- 3.27 ("Payment of Additional Amounts"), which currently requires Judgment Debtors to compensate Noteholders for certain tax deductions;

- 3.28 ("Payment of Stamp Duty and Other Taxes"), which currently requires Judgment Debtors to pay certain taxes related to the Notes; and

- 10.1 ("Issuer or Guarantors May Consolidate, Etc., Only on Certain Terms"), which currently prohibits Judgment Debtors from consolidating with, merging or amalgamating into or transferring their assets unless certain conditions are met.

Hranitzky Decl. Ex. F, at 110-19.

21. Section 7.2 of the Indenture states in relevant part:

> With the consent (evidenced as provided in Article VI) of the holders of not less than a Majority of each Series affected by such supplemental indenture at the time Outstanding, the Issuer, the Guarantors and the Trustee may, from time to time and at any time, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture with respect to such Series, the Notes of such Series or of any supplemental indenture or of modifying in any manner the rights of the holders of the Notes of such Series; <u>provided</u> that no such modification or amendment may, without the consent of the holder of each such Note affected thereby, (i) change the stated maturity of the principal of or interest on any such Note; (ii) change the principal amount of or interest on any such Note or change the obligation of the Issuer or either Guarantor to pay Additional Amounts; (iii) change the currency of payment of principal of or interest (including Additional Amounts) on any such Note; (iv) change in any manner adverse to the interests of the Noteholders the terms and provisions of the Guarantees in respect of the due and punctual payment of the principal of and interest on the Notes; (v) reduce the above-stated percentage of aggregate principal amount of Notes Outstanding necessary to modify or amend this

>    Indenture or the Notes or reduce the percentage of aggregate principal amount of the Notes Outstanding necessary for any action by the Trustee under the Collateral Agency Agreement or reduce the quorum requirements or the percentage of aggregate principal amount of the Notes required for the adoption of any action at a Noteholders' meeting or reduce the percentage of aggregate principal amount of the Notes necessary to accelerate the maturity of the Notes or waive any default hereunder and rescind and annul acceleration thereof; (vi) permit the creation of any Lien (other than Permitted Liens) ranking prior to or on a parity with the Lien of the Collateral Agent on the Collateral or terminate the Lien of the Collateral Agent on the Collateral or (vii) waive or adversely affect the right of any Noteholder to require the Issuer to purchase such Noteholder's Notes for cash upon the occurrence of a Change in Control pursuant to Section 13.5 without the consent of the Noteholders; <u>provided</u> that no consent of any Noteholder is required in connection with the execution of a supplemental deed not requiring the consent of the Noteholders hereunder or in connection with a consolidation, amalgamation, merger, conveyance or transfer permitted hereunder.

Hranitzky Decl. Ex. A § 7.2.

22.     Section 7.3 further states that "[e]very supplemental indenture shall comply with the provisions of the Trust Indenture Act of 1939 as in effect at the times of creation and delivery thereof." Hranitzky Decl. Ex. A § 7.3.

23.     On June 10, 2015, Lontar caused to be distributed another Tender Offer to Noteholders (the "**2015 Tender Offer**"). A copy of the Tender Offer is attached as Exhibit G to the Hranitzky Decl. Under the 2015 Tender Offer, Noteholders could tender their Notes in exchange for cash, at a value of $190 for each $1,000 principal amount of Notes. The 2015 Tender Offer expressly cautions that when consummated, it may significantly reduce the aggregate principal amount of Notes held by Noteholders. Hranitzky Decl. Ex. G, at 2. Further, the 2015 Tender Offer states that "Notes outstanding after the completion of the Tender Offer will continue to be in default and subject to the standstill on payment on principal and interest . . . . No assurance can be given that the Existing Note Obligors will pay any interest on, or repay the principal of, any Existing Notes which remain outstanding after completion of the Tender

Offer." Hranitzky Decl. Ex. G, at 3. The 2015 Tender Offer expired on July 9, 2015. Hranitzky Decl. Ex. G, at 8.

24. Plaintiff did not participate in the 2015 Tender Offer. Song Decl. ¶ 13.

25. Counsel for Judgment Debtors threatened during an in-person meeting that if Plaintiff were to refuse to settle their claims against the Judgment Debtors on the terms terms being offered by the Judgment Debtors, the Judgment Debtors will attempt to force a restructuring on the Plaintiff pursuant to the "scheme of arrangement" procedure without the Plaintiffs consent. Song Decl. ¶ 16.

26. On October 21, 2015, Plaintiff sent to Defendant/Trustee a proposal to dismiss this lawsuit in exchange for a stipulation from Judgment Debtors that they agreed to abandon their attempt to change the law governing the Indenture, or to otherwise impair Plaintiff's right to repayment. Song Decl. ¶ 14.

27. The Judgment Debtors refused to sign the stipulation. Song Decl. ¶ 15.

Dated: December 23, 2015  
New York, New York

DECHERT LLP

By: */s/ Dennis H. Hranitzky*  
Dennis H. Hranitzky  
1095 Avenue of the Americas  
New York, NY 10036-6797  
(212) 698-3500  
(212) 698-3599 (facsimile)  
dennis.hranitzky@dechert.com

*Attorneys for Plaintiff*